In re Wooten's Estate.

[(*Nashville.*   December Term, 1904.)'

1. **ADMINISTRATORS.**   Jurisdiction of circuit court is appellate and revisory only as to their appointment.

The jurisdiction of the circuit court over matters pertaining to the appointment of administrators is appellate and revisory only, and it is without authority to grant letters of adminstration, but the proper practice is for that court, upon determination of the appeal, to remand the cause for the issuance of letters, and not to hear new applications for the appointment of an administrator after declaring that none of the applicants in the county court was entitled to the administration. (*Post,* pp. 297-300.)

Code cited and construed:   Secs. 3934, 3940 (S.); secs. 3042, 3048 (M. & V.); secs. 2202,.2207 (T. & S. and 1858).

Case cited and approved:   Wilson v. Frazier, 2 Hum., 31.

2. **SAME.**   Jurisdiction to revoke or cancel letters of administration is in the county court.

The county court is the proper and only tribunal having original jurisdiction to revoke or cancel letters of administration improvidently or improperly granted by it. (*Post, p.* 299.)

3. **SAME.**   Right of next of kin to nominate an administrator.

The next of kin with the prior right to administer, not desiring to do so personally, has the right to nominate another in his stead who should be appointed, if he is a fit and suitable person tested by the same rules as if the next of kin were applying in person. (*Post, pp.* 306-311.)

Cases cited and approved:   Feltz v. Clark, 4 Hum., 79-83; Phillips v. Green, 4 Heis., 350; Varnell v. Loague, 9 Lea, 161.

114 Tenn—19

In re Wooten's Estate.

4. **SAME. Same. Right of next of kin to nominate another after court's refusal to appoint first nominee.**

The county court, on denying the application by the next of kin for the appointment of his nominee as administrator, has no right of its own motion to appoint another as administrator, without giving the next of kin, and after him the creditors, an opportunity to present one of their number, or to nominate another person for the appointment. (*Post, pp.* 311, 312.)

5. **SAME. Attorney representing bulk of estate, but obligated to carry into effect certain agreements requiring the sanction of the chancery court is ineligible.**

The attorney representing the bulk of the estate, but at the same time obligated as such attorney to carry into effect certain agreements which divert large amounts of the funds of the estate into channels different from the ordinary channels of distribution, is not eligible for appointment as administrator, especially where the sanction of the chancery court for carrying such an agreement into effect is required. (*Post, pp.* 301-306, 312.)

6. **SAME. Same. Right of next of kin to make second nomination is not waived by his appeal and decision against first nominee.**

The next of kin, by appealing from an order of the county court refusing to appoint his nominee for administrator and appointing another of its own motion, does not waive his right to make a second nomination, if the first nominee was held to be ineligible by the revising court. (*Post, pp.* 314, 315.)

7. **SAME. Court to decide between next of kin of same degree applying for administration.**

The statute providing that where there is more than one next of kin, the court may decide which of them shall be entitled to administration, applies only where there is more than one next of kin of the same degree applying for administration. (*Post, pp.* 315, 316.)

Code cited and construed: Sec. 3939 (S.); sec. 3047 (M. & V.); sec. 2206a (T. & S.).

In re Wooten's Estate.

FROM DAVIDSON

Appeal from the Circuit Court of Davidson County.—
LYTTON TAYLOR, Special Judge.

VERTREES & VERTREES, C. C. TRABUE and BOYD &
M'NEILLY, for Frizzell.

ALLEN & RAINES, for John T. Allen.

JOHN A. PITTS, W. D. WITHERSPOON and JOHN R.
AUST, for Baxter Smith.

JOSEPH W. BYRNS, HARRY S. STOKES and JOHN E.
TURNEY, for Wooten Heirs.

MR. JUSTICE WILKES delivered  the  opinion of  the
Court.

Mary J. Wooten died in Davidson county in January
1904, leaving a will, in which John R. Sneed was named
as executor.

The greater part of her estate was given to her sis-
ter, Mrs. Martha E. Hudson, a resident of California.
It consisted of about $100,000 of personalty  and some
$25,000 of realty.

The property given to Mrs. Hudson was limited to a

life estate, with remainder to her children.    The rents of a storehouse in Nashville were given to W. H. Atwell for life, with remainder to Mrs. Hudson; and some minor bequests were made.

She left no children, and her next of kin were her sister, Mrs. Hudson, and nephews and nieces, and their descendants.

Lewis Green and others, being nephews and nieces, instituted a contest of the will.   It was supported zealously by the executor and the beneficiaries under it, and a heated and protracted litigation resulted.

In the contest, Mrs. Hudson, up to the time of the trial, stood with the executor for the maintenance of the will; but on the day before the trial she entered into a compromise with the contestants, in which she assented that the will might be set aside on the ground of insanity of the testatrix, and because it was procured by fraud and undue influence; and, as part of the compromise, it was also agreed that she should receive one-third of the estate, instead of one-fourth, to which she would have been entitled as sister.   She was also to have certain furniture and jewelry, and all her interest was to vest in her absolutely, instead of for life, as limited by the will.

The executor was represented by quite an array of counsel, among whom was Col. Baxter Smith.

The majority of the contestants were represented by Allen & Raines, and the other interest by Stokes & Byrns, while Mrs. Hudson was represented by Messrs. Turney & Ashcraft.

In the agreement of compromise it was stipulated that Mrs. Hudson's attorneys should be paid out of the estate $5,000 for their services, and that the attorney's fees and expenses of Sneed, executor, should be paid out of the general estate. It was also agreed that Judge Allen was to be made administrator of the estate so soon as the will was set aside, and that he would proceed to wind up the estate as soon as possible, and, if necessary, file a bill in chancery for that purpose.

In this agreement Mr. Atwell was ignored, and this prevented the acquiescence of Sneed, executor.

With matters in this status, the contest was heard, and the will was set aside.

It does not appear that this was done because of the agreement, but upon a regular trial, in which Mrs. Hudson testified in behalf of the contestants.

Thirty days were allowed for a motion for a new trial. Within the thirty days, Sneed, the executor, died; and soon thereafter a petition was filed in the county court by the contesting parties, represented by Allen & Raines and concurred in by Mrs. Hudson, asking that Judge Allen be appointed administrator upon the estate; and in this petition the agreement entered into was referred to, and it was stated that Atwell had been promised the same share in the estate that he would have received under the will.

Atwell and the attorneys of Sneed opposed this application upon the ground that Allen had represented certain interests in the estate as attorney, that his interest

was to defeat the will, and that the contest over the will was not yet decided, but was pending upon the motion for a new trial; and they asked that an administrator *de bonis non* be appointed, with the will annexed.

To this Green and others filed an answer asking that an administrator *pendente lite* be appointed to hold the funds until the will contest should be settled, and renewed the request that Judge Allen be appointed.

On the same day the county judge appointed Charles F. Frizzell, a business man of Nashville, as such administrator *pendente lite,* requiring of him a bond for $200,000. Mr. Frizzell had not been an applicant for the office, was not interested in the estate as a beneficiary or creditor, but was selected by the county judge, presumably, because he was disinterested, and a business man living in the city, and a suitable person to act, though he had no experience in the execution of such trusts.

After this was done, a compromise was entered into with Mr. Atwell, by which it was stipulated that he should have a net income of $100 per month, and rental from two storehouses belonging to the estate, and that the estate would expend in improvements upon this property $2,000.

This was in lieu of what Mr. Atwell was given by the will, and amounts, perhaps, to something more than the provision made by the will.

It was also agreed that Sneed and his attorneys should have $20,000 out of the estate as compensation for their expenses and services.

It further appeared that Messrs. Allen & Raines were to have one-third of the recovery made by them for their clients out of their clients' shares, and that Judge Allen was to have his compensation as administrator, in addition, out of the estate.

As a result of these agreements, the will contest was finally abandoned; and on September 24, 1904, Judge Allen filed a supplemental petition in the county court, setting up the settlement of the contest, and reconciliation of the conflicting interests, and stating that he had been selected by the next of kin to carry out the agreements as made and asking that he be appointed administrator.

This was opposed by the interests represented by Stokes & Byrns, but was acquiesced in by all other interested parties, or at least there was no opposition.

The county judge, on the hearing, decided that Judge Allen was not a proper party to administer, because not disinterested, and he thereupon appointed Mr. Frizzell, requiring a bond of $200,000; and Green and other petitioners appealed to the circuit court.

In that court, on the day of hearing, the petition of Green was amended so as to pray that James Wooten, one of the nephews and one of the petitioners, be appointed, if Judge Allen could not be, or that he be associated with him in the administration.

Thomas Wooten, another nephew, represented by Stokes & Byrns, was allowed to file a petition asking for his own appointment in the event the court should re-

move Frizzell and decide to appoint one of the next of kin.

These applications in the circuit court were excepted to by Mr. Frizzell.

On the trial the attorneys for Sneed and Atwell expressed a willingness for the appointment of Judge Allen.

The evidence was heard, and the court decided that neither Allen nor Frizzell had the right to administer; that James and Thomas Wooten were not fit and suitable persons to administer; that the next of kin who were fit and proper persons had the prior right to administer for six months after the death of Sneed and the termination of the will contest; and he thereupon fixed October 31, 1904, as a date to hear applications for the administration from fit and proper persons who were next of kin or creditors, and in default of such kin or creditors, then from other persons.

Upon this day, petitions for such appointment were filed by Col. Baxter Smith and Ben R. Webb; Mr. Smith claiming to be a creditor of the estate on account of fees owing him by the executor for services rendered in the will-contest suit.

The application of Col. Smith was approved by the attorneys for Sneed and Atwell, who claimed to be creditors, also, by virtue of fees owing them, as before stated.

The circuit judge thereupon appointed Col. Smith, and directed that his action be certified to the county

court, and that court was directed to issue letters accordingly.

Frizzell, Allen, and the Wootens, who had applied, moved for a new trial, which was overruled.

The grounds of the motion for a new trial of Mr. Frizzell are, in substance, that the court was in error in holding that Mr. Frizzell was incompetent by reason of inexperience, since there was no proof justifying that conclusion, and because no issue at all had been made with respect to Mr. Frizzell's qualifications; and was in error in assuming the authority to appoint an administrator, inasmuch as such authority resided only in the county court; and was in error in holding that Baxter Smith, Esq., was a creditor of Mary J. Wooten, deceased and in assuming to appoint him administrator.

Much testimony as to the fitness to Mr. Frizzell was taken on the motion for a new trial, in which it was shown that he was a good business man, of fine reputation, but without experience in administering estates.

All the parties except Col. Smith appealed and have assigned errors.

It is not necessary to take up these assignments *seriatim*.

We are of opinion that the proceedings in the circuit court upon the appeal from the county court were irregular.

It was error to allow the petitions of James and Thomas Wooten to be filed.

Our statute provides that letters of administration

shall be granted by the county court of the county where the intestate had his usual place of residence at the time of his death. Shannon's Code, section 3934.

There is no authority of law for the appointment of an administrator by the circuit court.

The jurisdiction of the circuit court over matters pertaining to the appointment of administrators is appellate only.

Section 3940 of Shannon's Compilation provides that any person who claims the right to execute the will or to administer upon the estate of an intestate, who thinks himself injured by an order of the court (meaning the county court) in granting letters testamentary or of administration, may appeal to the circuit court of the county in which the order is made, on giving bond as in other cases of appeal.

The original act from which the above provision of the Code was taken was passed in 1794, and contained the following, in addition to what has been quoted: "And such circuit court is hereby declared to have cognizance thereof, and shall at their sitting next succeeding such appeal, determine the same, and upon such determination had, such court shall proceed to grant the letters to the person entitled to the same, he or she giving bond, with sufficient security, for the faithful discharge of the trust." Caruthers & Nicholson's Comp. St. 1836, p. 76.

This provision for the appointment of administrators

by the circuit court was not brought forward into the Code of 1858, but was omitted therefrom.

And since the adoption of that Code the circuit court is without authority to grant letters of administration, and the proper practice is for that court, upon the determination of the appeal, to remand the cause for the issuance of letters.

Likewise the county court is the proper and only tribunal having jurisdiction to revoke or cancel letters improvidently or improperly granted by it.

For tht same reason, the action of the circuit judge in hearing new applications for the appointment of an administrator, after declaring that neither Judge Allen nor Mr. Frizzell was entitled to the administration, was irregular and unauthorized, and the appointment of Baxter Smith as administrator by the circuit court was without legal authority.

Neither Mr. Smith nor the Wootens had, so far as the record shows, made an application for appointment to the county court, and their claims were not considered by that court, and their right to the office was not involved in the appeal to the circuit court.

The only question before the circuit court upon the appeal was the question whether either Judge Allen or Mr. Frizzell was entitled to the administration.

It is true that while the appeal was pending in the circuit court that court had jurisdiction and power to make all amendments, and, if necessary, to introduce new parties to determine the questions involved and contest-

ed in the county court, and the proceedings in that court were *de novo;* but it had no power to consider the application of any one who was not a party to the contest in the county court.

As is said in the case of *Wilson* v. *Frazier,* 2 Humph., 31: "There must be a dispute and contest on the subject in the court of probate, to confer on the circuit court jurisdiction over the matter by appeal or certiorari. If, when the grant of administration was made to the defendant by the county court, the plaintiff had presented her claim, she could have taken her case to the circuit court by appeal or certiorari, according to the circumstances. Not having done so, the proceeding to repeal the letters, once granted, must originate in the county court. Without this, the circuit court has no jurisdiction over the matter."

This was a case in which the widow was attempting in the circuit court to set up her right to the administration over a party who had already been appointed in the county court, and for that purpose she filed a petition in the circuit court praying for writs of certiorari and supersedeas.

In Pritchard on Wills and Administration, section 46, it is said: "If there are several claimants to the administration, they must be brought before the county court and make their claim there, and a claimant may appeal to the circuit court from an adverse decision of the county court; but, if claimants do not appear before the

county court to assert their rights, they cannot afterwards question the right of grant of letters to another."

The same author, in section 547, says: "The right to appeal is limited to persons who claim the right to letters—that is, to those who appear before the county court and assert their claims, and so become parties to a controversy in that court—and the appeal lies only from the final judgment of the county court against a party to the contest made in that court. If no controversy is made in the county court, no right of appeal exists, but the claimant must make application for a revocation of the letters."

As we have already held, the only question before the circuit court was the one raised between Judge Allen and Mr. Frizzell in the county court, and brought by appeal to the circuit court, and involves the question whether the county court properly decided the matter in litigation between these two parties, as to whether either should be appointed.

We now address ourselves to the consideration of this question.

The county judge declined to grant letters of administration to Judge Allen upon two grounds—one, that the next of kin had no right or power to name the administrator; and the other, that, even if such right existed, Judge Allen was not a disinterested person, but represented certain parties to the litigation in the contest of the will, as attorney, and had made the compromise agreement heretofore referred to, which, it was claimed,

prejudiced the rights of parties whom he did not represent, and that he was morally obligated, and had expressed his determination, to do all in his power to carry out the compromise and execute it according to its terms.

We have heretofore referred in a general way to the compromise agreement which was procured by Judge Allen in order to settle the matter of the contest of the will.

We think it important to set out these agreements more in detail: First, the agreement he made with Mrs. Martha E. Hudson provides, among other things, as follows: "The attorneys of said Martha E. Hudson, by the consent of their client, Martha E. Hudson, consent for said will to be set aside, on the grounds of insanity of said Mary J. Wooten, deceased, at the time said will was made and on the grounds that said will was procured to be made by fraud and undue influence, contrary to the former expressed wishes and intentions of said Mary J. Wooten, deceased, for and in consideration that said Martha E. Hudson shall be allowed to receive one-third of the net proceeds of said estate, in full of her share of said estate, and also that she shall be allowed to keep and retain the household furniture which has been already shipped to her home, and the jewelry mentioned in items 12 and 13 in said will without charge; which terms are approved, consented and agreed to by said attorneys for contestants, it being understood that all the attorney's fees and expenses of said suit for plaintiff, J.

In re Wooten's Estate.

R. Sneed, executor, be paid out of the general estate and also the fees of said Turney and Ashcraft; that is Turney's and Ashcraft's combined and aggregate fees it is agreed shall be five thousand dollars, which shall be paid out of the general estate.

"It is further stipulated as a part of this compromise that the said estate of Mary J. Wooten, deceased, shall be administered as if the deceased had died intestate and that John T. Allen shall be appointed and qualified as such administrator as soon after the verdict of the jury setting aside said will as said appointment can be made by the county court, it being agreed that said administrator shall distribute said estate as soon as practicable according to the terms of this agreement; and if necessary, that said administrator shall file a bill in chancery for authority to settle and distribute said estate according to the above agreement.

"Witness our hands this July 25th, 1904."

The second agreement stipulated that Mr. Atwell should receive a net income of $100 per month from the property of the estate (being the income from two storehouses), while the will had given him the income from only one of these storehouses, and that there should be expended out of said estate upon the improvement of said houses the sum of $2,000.

The third agreement was made with the attorneys who had represented the executor, and this stipulated that $20,000 should be paid out of the estate to these

parties as compensation to the executor and attorneys for services in connection with the estate.

It thus appears that Judge Allen stood committed to the payment of these sums out of the estate, and further to distribute to Mrs. Hudson one-third of the estate, instead of one-fourth, to which she was legally entitled in case of the intestacy of Miss Wooten.

It also appears that Judge Allen's fees as attorney had been agreed upon with the parties whom he represented, and were to be paid by them, but that his fees as administrator were to be paid, in addition, out of the estate. The decree entered by the county judge, in refusing to appoint Judge Allen, states the following as the grounds for such refusal, to wit: That the dismissal of the contest proceedings "was the result of a compromise settlement entered into by an agreement between these petitioners, on the one part and the attorney for the proponents of the will, on the other part, by which it was agreed and stipulated.what should be the distributive share of each of the heirs joining in this petition, six of whom are minors, and it was also agreed what amount should be paid as compensation for the services of the said executor, now deceased, and his attorneys in said contest suit; and it not appearing to the satisfaction of the court that the compromise entered into, whereby said suit was dismissed, is for the best interests of said minors, and it appearing that, at the time said compromise was effected and said suit was dismissed, that said estate of Mary J. Wooten, deceased, was not

represented in the person of any administrator, and it further appearing that the administrator appointed by this court will have presented to him the question as to the propriety of carrying out the terms of said compromise settlement and it further appearing that said petitioner, Jno T. Allen, is one of the attorneys in said case, and also said petitioner, as attorney, entered into and signed said compromise settlement, and also said petitioner announced upon the hearing of the application for appointment as administrator in this cause his intention, if appointed, to carry out the terms of said compromise settlement, the court is of the opinion that it would not be proper to appoint him as administrator."

It must be borne in mind that Judge Allen represented seven-eighths of the entire estate, after making the settlement which he did with Mrs. Hudson.

There is no charge that he acted corruptly or in bad faith in making the compromises which he made in order to settle the contest over the will.

The most that is said is that Judge Allen in these compromises took care to protect his own interests and those of his client to the full extent, and that, in order to effect the settlements and compromises, he diverted a considerable amount of the estate into channels into which it would not have gone if Miss Wooten had died intestate and these compromises had not been entered into.

Judge Allen, in his examination, stated that he intended to carry out these agreements, because he had

114 Tenn—20

made them, and that they are such contracts and agreements as he thought ought to be carried out, and were to the best interests of all parties; and in the agreement with Mrs. Hudson it is recited that he may, as administrator, file a bill in the chancery court for authority to settle and distribute the estate according to the agreement.

It is evident that the contest over the will was a stubborn one, and the fight to set it aside was a serious one— so much so that Judge Allen described it as "the fight of his life."

It is evident that, if the will had not been set aside, the interests of all the heirs and distributees would have been lost to them, except that given to Mrs. Hudson.

There can be no doubt, under our statutes and the holdings of our courts, but that the next of kin has the prior right to administer; and the question presented is whether or not such next of kin has the legal right to nominate another in his stead to act as administrator.

Mr. Schouler on Executors and Administrators says: "Even granting, as we must, that the court is not bound by the nomination made by the widow or the kindred first entitled to administer, yet the wishes and preferences of those having the greatest interest in preserving the estate are entitled to great weight; and hence the appointment, at the court's discretion, of any suitable person upon whom the next of kin entitled to the office, or a majority of them, may agree, is highly favored in American practice—the rights of more remote kindred, credit-

ors, and all strangers in interest being postponed to their expressed choice accordingly."

Again: "Where the next of kin reside abroad, their resident nominee may receive the appointment; any such attorney, so called, however, being responsible to all parties in interest."

Again: "Inasmuch as the regular administration of estates, whether testate or intestate, is highly favored at the present day, the selection of third persons of integrity, experience, and sagacity for such responsible duties must often be most desirable.

"And if a testator makes such a selection, or associates another with his next of kin or legatees in the trust, for reasons admittedly sound, there seems no good reason why the next of kin themselves, if the estate be intestate, should not exercise a corresponding discretion, and nominate some trustworthy friend, rather than forfeit all claim to administer by failing to qualify personally for the office," Schouler (2d Ed.), pp. 146, 147, section 113.

The same writer says further: "One determining consideration between next of kin in cases of doubt may be their relative extent of interest.

"But another important one is the confidence reposed by kindred, and hence, in cases of conflict, it is not infrequent to appoint the one upon whom a majority of the parties in interest agree.

"The wishes of the party or parties having the largest amount of interest may in other respects preponderate

in the selection of administrator.    The party first seek-
ing the appointment  has   some   claim to   preference.
These and the other  considerations  already set forth,
which touch rather upon personal suitableness or compe-
tency for the trust, the court taking jurisdiction should
duly weigh, where controversy has arisen, and grant the
administration to such party or parties in the preferred
class as shall seem most proper." Id., p. 142, section
110.

Redfield on Wills, vol. 2, p. 74, section 13, says:
"Where the person entitled to the effects of the de-
ceased resides out of the State, it is common in England
to grant administration to the attorney in fact of such
person, under a special power, and to express   in   the
grant that it is for the use and benefit of the party so en-
titled.   But such administrator and his sureties are re-
sponsible to the party and to all parties who may be able
to show themselves  entitled  to the   effecets of the de-
ceased, and cannot exonerate himself by showing per-
sonal payment to the person for whose benefit the ad-
ministration was granted."

Mr. Schouler, in his work on Wills, p. 146, section
113, says:   "The appointment at the court's discretion
of any suitable person upon whom the next of kin enti-
tled to the office, or a majority of them, agree, is highly
favored in American practice; the rights of more remote
kindred, creditors and all strangers in interest being
postponed to their expressed choice accordingly. Where
the next of kin reside abroad,their resident nominee may

In re Wooten's Estate.

receive the appointment; such attorney, so called, however, being responsible to all parties in interest."

In this case Mrs. Hudson is the next of kin, and was a resident of California, and she joined with the greater portion of the more remote next of kin in asking for the appointment of Judge Allen.

We have several instances in our reports where the court has recognized, if not affirmed, the appointment of the nominee of the next of kin.

In the case of *Feltz* v. *Clark,* 4 Humph., 79-83, the court, in substance, said that Clark, the nominee of a nonresident next of kin, would not be removed at the instance of a person who was the resident next of kin, after he had marshaled the assets of the estate, paid the debts, and partly distributed the surplus.

In *Varnell* v. *Loague,* 9 Lea, 161, the court held that a public administrator appointed within six months of the death of the intestate should be removed at the request of the next of kin and the nominee of the next of kin should be appointed in his stead. The court in this case appears to put the nominee of the next of kin upon the same footing as the next of kin themselves, and entitled to preference in administration.

In the case of *Phillips* v. *Green,* 4 Heisk., 350, it was held that the widow, in exercising her preference under the law, might associate with herself a prudent business man to act with her.

While, therefore, we would not hold that the county court must in any event appoint the nominee of the next

of kin, yet such nominee should be preferred, and unless there are valid reasons, the nominee should be appointed.

In other words, the next of kin is entitled to have such nominee appointed, if he is a fit and suitable person; and, in determining the question of fitness, the same rules and test must be made as would be if the next of kin were applying in person.

It does not appear to be the policy of our laws to select for an administrator a person not interested in the estate, or one whose interest is not antagonistic to that of other beneficiaries in the estate.

On the contrary, the leading consideration appears to be that the party selected should have an interest in the estate, and it does not matter if such interest is antagonistic to that of the other beneficiaries.

Thus the widow is given preference, though she have an interest opposite or even hostile to that of the distributees. The next of kin, come next without regard to the magnitude of interest he has, or how it may conflict with the interests of others. Then the creditor is next entitled, and the largest creditor has preference, though his interest is necessarily antagonistic to all the other creditors, and indeed to all the distributees.

We think the appointment of Mr. Frizzell was unauthorized, and should not have been made. He was not an applicant, was not the nominee of any interest in the estate, and, it appears, was not acceptable to any inter-

In re Wooten's Estate.

est in the estate, and was not eligible until after the next of kin and creditors had been given the preference.

His appointment appears to have been made by the county judge upon his own motion, without the knowledge of any of the parties in interest, and without giving them any opportunity to question his fitness. The beneficiaries, who were the next of kin, were not advised that Judge Allen would not be appointed until the county judge brought in the opinion refusing him, and in the same opinion Mr. Frizzell was appointed. No opportunity was given then to the next of kin to present one of their number, or to name another person, or take any other step to procure an acceptable administrator; but they were prevented from doing so by the summary naming of Mr. Frizzell, without their previous knowledge, consent, or concurrence in any way.

The only possible interest that he could have in the estate's administration would be the fees and emoluments of the office or trust.

No opportunity was given to question his fitness for the place, or to name a new nominee or to present one of the next of kin or a creditor.

We do not think that the right of the next of kin to either qualify or name the appointee was exhausted when Judge Allen was refused, but they had the right to be notified that Judge Allen was not acceptable and to have the opportunity offered them to name another appointee.

Moreover, the creditors of Miss Wooten had a right

to be heard before the county judge should take an outsider and appoint him to the office.

We are of opinion that Baxter Smith is a creditor for some amount, in the sense of our statute giving creditors a preferential, though deferred, right to administer.

We are of the opinion, therefore, that there was no authority for the appointment of Mr. Frizzell at the time and in the manner in which he was appointed, and his appointment is canceled and set aside, as administrator *de bonis non*.

We are also of the opinion that, under the facts of the case, Judge Allen was not eligible to appointment. He does not stand in the attitude of a person interested in the estate, like the widow or next of kin or a creditor, but he occupies the position of an attorney, representing, it is true, large interests and the bulk of the estate; but at the same time he is obligated, as attorney, to carry into effect certain agreements which divert large amounts of the funds of the estate into channels different from the ordinary channels of distribution. Not only is he morally obligated to enforce these agreements, but he has openly and very properly avowed his purpose to do so.

But in order to carry these agreements into effect an administrator should have the sanction of a court of chancery, and an administrator, until this sanction is given, should stand indifferent and unembarrassed by prior obligations.

In making these rulings, we are not in any way reflect-

In re Wooten's Estate.

ing upon the integrity of character or business qualifications of either Judge Allen or Mr. Frizzell, but simply holding that they are not persons eligible to be appointed—Mr. Allen, because of his attitude as attorney, and his relation to the compromises made, and Mr. Frizzell, because there are others who are entitled in preference to him, and because his appointment was not in consonance with the rules in such cases; and the same may be said as to Mr. Smith.

The judgment of the circuit court will therefore be affirmed as to Allen and Frizzell, and reversed as to Smith, and the cause remanded, with copy of this opinion to the circuit court of Davidson county, with instructions to issue a *procedendo* to the county court, directing the judge of that court to proceed to appoint an administrator *de bonis non* of the estate of Mary J. Wooten. In making said appointment, the next of kin will have preference, unless unfit for the office; next, the appointee of the next of kin, unless unfit; next, the largest creditor; and, in default of these, such person as the county judge may deem most suitable and proper, in accord with the rules herein laid down.

The cost of the proceeding in the several courts will be paid by the administrator *pendente lite* out of the funds of the estate in his hands.

MR. JUSTICE McALISTER, dissents, and is of opinion that the appointment of Mr. Frizzell was authorized, and should have been affirmed.

In re Wooten's Estate.

ON REHEARING.

MR. JUSTICE WILKES delivered the opinion of the Court. A petition to rehear is filed in this case and is pressed with earnestness, zeal, and ability.

It is said that the contest in the circuit court was between Judge Allen and Mr. Frizzell, as to which was entitled to the administration, and, the court having determined that Judge Allen was ineligible, it must necessarily follow that Mr. Frizzell, should be appointed, and hence that the result reached by the court is incorrect, even if its holding upon the law be correct.

While the language of the court in the original opinion is subject to some verbal criticism, it clearly appears that the court considered the question before it to be whether either Judge Allen or Mr. Frizzell was entitled to the administration, and not which of the two was entitled to administration, and excluding everybody else from consideration.

The applicaton for the appointment of Judge Allen was made by a petition, and this petition was presented by Mrs. Hudson, the next of kin, and by other parties more remotely next of kin, representing seven-eighths of the entire estate. The petition was for the appointment of an administrator *de bonis non,* and Judge Allen was nominated for the appointment. He had been selected by the next of kin, and they claimed the right to make the nomination. The county judge denied them this right. They did not desire to abandon their nomination, but preferred to appeal to a higher court; and this,

we think, they had a right to do, instead of being forced to surrender their choice and name another.    The judgment of the county judge rejecting the nominee of the next of kin on account of his ineligibility was not a    finality.    The next of  kin had the right to bring their choice before a higher court, and have that court pass upon the eligibility of the nominee.

The court, in declaring Judge Allen ineligible, in the same order appointed Mr. Frizzell.    From this order the next of kin appealed, and the appeal is specific in stating that it is from the decree rejecting Judge Allen, and also from the decree appointing Mr. Frizzell.

The action of the  county  judge  in  appointing  Mr. Frizzell in the same order and at the same time left no opportunity to the next of kin to present any other nominee, and there remained no alternative but to appeal.

We think that the action of the next of kin in standing by their choice until his eligibility should be passed on by a revising court was not a waiver of their right to make another  nomination  in  the event the revising court should declare him ineligible; nor was their right of  choice  exhausted by the fact that their choice was held to be ineligible by the revising court.

It is said that the court did not notice section 3939 of Shannon's Compilation, and this is true.

That section applies to a case where there are more than one next of kin of the same degree applying, and provides that the court may select between them.

It must mean next of kin in the same degree, and not in different degrees.

The condition provided for by section 3939 was not presented by the record, and hence the section was not considered, because it was believed to be not applicable.

We do not understand this present case to be one for the removal of Mr. Frizzell after he had been regularly appointed, and by a collateral proceeding, but it is an attempt, by the aid of the revising court, to prevent the consummation of his appointment.

His appointment was set aside by the appeal, and stands as if it had never been made, and was finally canceled by the effect of the decision of the revising court.

We do not mean to hold that the next of kin may, without limit, insist upon making appointment after appointment, but this right of appointment is limited within reasonable bounds, but at the same time so as not to cut off the reasonable exercise of the right to make appointment.

We have made some verbal alterations in the original opinion, so as to make its language less liable to misconstruction, but have not in anywise changed its effect and holding; nor do we see any reason to do so, after a careful examination of the petition to rehear, and the petition is dismissed.

MR. JUSTICE MCALISTER does not concur.