## Louisville Trust Company, et al. v. Bingham, et al.

(Decided December 21, 1917).

### Appeal from Jefferson Circuit Court (Common Pleas Branch, No. 4).

1. Executors and Administrators—Right to Appoint.—The right of preference or nomination in the administration of a decedent's estate is a property right; and courts, in granting letters of administration, must, under section 3896, Ky. Stats., if they apply therefor within the time allowed therefor, prefer first the surviving husband or wife; and second, those next entitled to distribution, or one or more of them who the court judges shall best manage the estate.

2. Executors and Administrators—Right to Nominate.—Where the surviving husband, being the sole distributee entitled to administer, nominated a suitable person to administer the estate of his deceased wife, the court was without discretion to appoint another, unless the right of nomination was waived.

3. Executors and Administrators—Appointment—Waiver.—Under Ky.. Stats., section 3897, the right of administration of intestate estates by those preferred by statute is waived, if they fail to apply for letters of administration before the second term of the county court following death of the decedent; and in case of testate estates, the right of preference may be exercised when the will is. produced and probated. The right of appointment, or to nominate another in his stead, was not waived by the surviving husband, who produced to the court authenticated copies of will and codicil and an original codicil and, pending their probation, suggested his nominee and at the probation moved the appointment of his nominee.

4. Action—Equity.—Under the classification of actions by section 6,. Civil Code, a proceeding to appoint an administrator is an ordinary action, and the court did not err in refusing to transfer to the equity docket an appeal to the circuit court from an order of the county court appointing an administrator.

5. Executors and Administrators—Unfitness of Nominee—Presumption.—The fact that an estate is large, or that a large inheritance tax is due the Commonwealth by the estate, does not raise the presumption that the nominee of a distributee will not· properly guard the interests of the Commonwealth, especially where the officers of the Commonwealth, charged with the collection of the tax, concur in the appointment; and will not warrant the court in appointing, on its own motion, a co-administrator.

6. Executors and Administrators—Unfitness of Nominee—Right of Court.—The right of a sole distributee within the time he is entitled to administer to nominate a personal representative of a decedent is qualified only by the condition that the nominee be suitable; and where it appears that the nominee is unfit the court, in its discretion, may either disregard the nomination or appoint another to act with the nominee.

ROBERT L. PAGE, STUART CHEVALIER, T. K. HELM and E. G. HILL for appellants.

E. J. McDERMOTT, BRUCE & BULLITT, and HUMPHREY, MIDDLETON & HUMPHREY for Robert W. Bingham.

HELM BRUCE for Trustees, William A. Blount and William R.. Kenan, Jr.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming..

This is an appeal from the judgment of the Jefferson circuit court, denying the right of the county court to appoint as administrator with the will annexed one other than that demanded by the surviving husband, who is the only relative sharing in the distribution of the testate's estate residing in this state.

No question of fact is involved, as it is conceded that both the Fidelity & Columbia Trust Company, nominated by the surviving husband and appointed by the court as administrator with will annexed, as well as the Louisville Trust Company, appointed as co-administrator upon the court's own motion and over the protest of the surviving husband, are competent and qualified to act; and that Robert W. Bingham, surviving husband of Mary Lily Bingham, the testatrix, is the sole distributee given a right to administer under our statutes.

Of the questions of law presented, the principal one is, whether or not, under the statute, the court must appoint the nominee, and no other, of the surviving husband, who has the sole right to administer, his nominee being a suitable person.

1. Section 3896, Kentucky Statutes, is as follows:
"The court having jurisdiction shall grant administration to the relations of the deceased who apply for the same, preferring the surviving husband or wife, and then such others as are next entitled to distribution, or one or more of them who the court shall judge will best manage the estate."

As testatrix died a resident of Jefferson county, there is no question but that under sections 3894 and 4849, Kentucky Statutes, the Jefferson county court had exclusive and general jurisdiction to make the appointment. Jacobs v. L. & N. R. R. Co., 10 Bush 263; Young v. L. & N. R. Co., 121 Ky. 469; Paslick v. Shay, 148 Ky. 642; subject however to the qualification that, unless the right is waived, the court is bound in making the appointment to respect the preferences given distributees by the statute, *supra,* and in the order therein specified, when such parties apply for their own appointment. Buckner's Admr. v. Buckner, 120 Ky. 596; Watkins v. Watkins' Admr., 136 Ky. 266. It is therefore apparent that, unless waived, which question we will discuss separately, R. W. Bingham, the surviving husband, conceded to be the only person given a preference by the statute, who is a resident of the state, and therefore the only person qualified to act or to nominate another as administrator; Spayd v. Brown, 31 R. 438; Thompson v. Archie, 158 Ky. 591, had the absolute right to be appointed had he desired it; and this brings us to the real controversy. Did or did not he have a like absolute right to delegate, by nomination, his preference to another, conceded to be suitable? Appellees contend he did, and appellant that he did not, have such right. In effect the county court

held he did not, and the circuit court that he did have that right.

We shall first consider the authorities cited by appellant in support of its contention, which are chiefly, Triplett v. Wells, 6 Litt. 49, and Moran v. Moran, 172 Ky. 343.

In Triplett v. Wells, the widow of Triplett relinquished her right to administer and nominated her friend, White, but the court appointed Wells, a creditor of decedent; this court affirmed the appointment of Wells, giving its reasons therefor as follows:

"As the widow had no right by law to dictate to the court who should be appointed administrator in her stead, to the prejudice of a creditor, whose claim in law was next to her own, we are of opinion the county court did right in granting administration to Samuel Wells, the creditor."

There can be no doubt whatever that the court's reason for its conclusion was that the creditor was then considered, as stated, to have a claim *in law*, next to that of the widow, to the appointment, and this case, therefore, falls within a large class which denies a right upon the part of one distributee who is preferred by law to nominate a stranger to the exclusion of another distributee, also preferred to a stranger by the same law. Nor is the status of this case as authority altered by the fact that more than half a century later, in Thompson v. Archie, 158 Ky. 590, this court held that creditors were not preferred by the law, as they then were supposed to be and upon which supposition the opinion was based. Of the same class is Moran v. Moran's Admr., in which the next of kin of the decedent were brothers and sisters and children of deceased brothers and sisters; the right of one of the brothers to administer was recognized as superior to that of a stranger suggested by the other relatives entitled under the statute to appointment in preference to strangers. So, also, is Phillips v. Hundly, 135 Ky. 271, in which a child of the decedent was appointed, notwithstanding the widow and the other children and two named executors asked the appointment of two strangers. Watkins v. Watkins, 136 Ky. 267, and Buckner v. Buckner, 120 Ky. 596, are to the same effect. Spayd v. Brown, 31 R. 438, holds only that non-residents, though of the preferred class, cannot themselves act because of their non-residency, and therefore have no right to dictate the appointment. *Ex Parte* Williams, 158 Ky. 61, is irrelevant on the point under con-

sideration, because in that case the preference was waived.

These are all of the cases from this court relied upon by appellant and none of them is in point, as they only decide that one or several distributees given by the statute a right to administer, do not have the right to nominate a stranger to the prejudice of other distributees given a like though subordinate right to administer in preference to strangers. Of the cases cited by appellant from other jurisdictions, those from New Jersey, Alabama and Maryland, as to the question decided, are clearly of the same class as the local cases above reviewed; but in some at least of these, it is stated that the preferential right of appointment is purely personal, and such persons have no right of nomination or selection, and if they will not accept administration, it is for the court to appoint in its discretion, but in none of these cases did the court disregard the nomination of all parties preferred by the statutes and make a selection of a stranger not suggested by any distributee and not acceptable to the preferred relatives entitled to administer as was done here, so these cases are not in point except in so far as the language employed seems to hold that the court, in the exercise of its discretion, might have so done. The California and Montana cases are also of that character, as it is held In Re Dorris' Estate, 93 Cal. 611, 29 Pac. 244, under the statutory laws of those states which recognize some seven or eight classes of interested parties as entitled to a preference to appointment in the given order and to a right of nomination in some, but not in other such classes; that to the classes, not expressly given the right to nominate a stranger in their stead, "they are only entitled to nominate when they are the persons entitled to administer and then the nomination is submitted to the discretion of the court which may, if there is good reason for so doing, refuse to confirm the nominee and appoint *the person next entitled.*"

All of the cases cited from these two last-named states do, however, support more or less appellant's contention to the effect that they hold that, except in so far as the statute expressly bestows a right of nomination upon a class, the nomination of such a class is not absolute, but is addressed merely to the discretion of the court, which is in accord with appellant's argument that, as our statute does not, in express terms, give any right

of nomination, it must follow that county courts of this state, concededly of general and exclusive jurisdiction in such matters, may regard or disregard, in the exercise of that discretion, any and all nominations.

So, also in the South Carolina cases cited, McBeth v. Hunt, 31 S. C. 341, and *Ex Parte* Osterdorf, 17 S. C. 22, where creditors, who, under the statute of that state, have a right to appointment in preference to a stranger, but inferior to the right of certain relatives, were preferred over the nominees of such relatives, which clearly classifies these cases upon the question decided with such Kentucky cases as we have reviewed, *supra,* but, in so holding, the South Carolina court bases its decisions upon a construction of the statute, similar to ours, that the rights to preference conferred were personal and did not carry any right of nomination, whereas in the Kentucky cases it has been held simply that, under our statute, the right of nomination of a stranger does not exist in one class to the prejudice of another preferred class of distributees.

So that, summing up the cases cited by appellant, it appears the particular question being considered has not been before this court nor decided in the other jurisdictions referred to, but that a construction of our statute favorable to appellant's contention has been suggested by analogy and upon reasons stated in construing somewhat similar statutes in such other jurisdictions.

Conceding to such analogy and reasoning great weight upon a purely technical construction of the language employed in the statute, we will now consider the authorities cited upon the other side of the proposition by counsel for appellees, which consider the statute from entirely different angles and under other recognized rules of construction. The first of these is Hilton v. Hilton's Admr., 109 S. W. 905, 33 R. 276, in which a stranger, who was nominated by all of the distributees entitled to administer, was preferred to a relative of the intestate who was not entitled to participate in the distribution of the estate, and, therefore, accorded no right to administer under our statute, which limits such right to relatives who are distributees. This action of the county court was approved by this court, not upon the ground that the appointment was an exercise of the discretion of the county court, but rather because, as stated in the opinion, "it has been the universal custom in the county courts to appoint some suitable stranger at once

when requested by all of those who are entitled to distribution," which is, of course, no more nor less than a construction of the statute based upon a contemporaneous construction of it by the primary judicial authority vested with its enforcement, and such a construction by a court of last resort is, at least thereafter in the same jurisdiction, of more weight than a purely technical construction of the language of an ambiguous statute.

In the case of Spayd's Admr. v. Brown, *supra*, decided a short time before the Hilton case, the right of non-residents, who, except for their non-residency, would have had the right to administer, to nominate a suitable person was denied and the reasons therefor are thus stated by the court:

"In the case before us there was no person residing in this state kin to the decedent. His sisters, being non-residents, were not entitled to administer on his estate and not having that right, they could not direct the court to appoint any person or dictate who should be appointed."

Does not this language strongly imply the converse, not stated, that if the non-residents had been entitled to qualify they might have directed the appointment?

But one other Kentucky case is cited by appellees, Anderson's Committee v. Anderson's Admr., 161 Ky. 18, which is not directly in point, but which is, nevertheless, of importance and to which we shall refer later.

Counsel for appellees cite cases from North Carolina, Pennsylvania, West Virginia and Tennessee, in which states counsel for appellant seem to concede, as stated by opposing counsel, the statutes upon the question involved are similar to ours.

In the case of Taylor v. Virginia-Pochahontas Coal Co. (W. Va.), 88 S. E. 1070, not yet officially reported, the court said:

"The boy's mother is his sole distributee, and was entitled, under section 4 of that chapter, to preference in the appointment. She could not give the required bond, and designated plaintiff, whom the clerk appointed in her stead. Had she the right to name a substitute? is the question to be decided. It is argued that her right to the appointment is a non-delegable personal privilege extended to the distributee only. That she had the right to be appointed and thus to have defeated the previous appointment of Booth there can be no question, but that she could delegate that right to another is not so clear.

Apparently the statute does not prefer the distributee because of any peculiar fitness to fill the office, but on account of his or her beneficial interest in the estate to be administered. Where there is but one distributee, as in this case, the right seems to be absolute as in the case of a husband or wife of a decedent. If such distributee is *sui juris*, the court has no discretion to refuse the appointment. Why, therefore, may not the person having the sole right delegate it to another? The statute does not prohibit it, and we perceive nothing in the policy of the law to forbid it. In equity, deceased's mother is the sole owner of all the property belonging to his estate; no other person is so vitally interested in its proper administration as she, and consequently she ought to be permitted to name the administrator."

In Re Wooten's Estate, 114 Tenn. 289, 85 S. W. 1105, the Tennessee Supreme Court quotes the following from Schouler on Executors and Administrators (2nd Ed.), section 113:

"Inasmuch as the regular administration of estates, whether testate or intestate, is highly favored at the present day, the selection of third persons of integrity, experience and sagacity for such responsible duties must often be most desirable. And if a testator makes such a selection, or associated another with his next of kin or legatees in the trust, for reasons admittedly sound, there seems no good reason why the next of kin themselves, if the estate be intestate, should not exercise a corresponding discretion, and nominate some trustworthy friend, rather than to forfeit all claim to administer by failing to qualify personally for the office."

The court then says on its own account:

"We have several instances in our reports where the court has recognized, if not affirmed, the appointment of the nominee of the next of kin. . . .

"In Varnell v. Loague, 9 Lea, 161, the court held that a public administrator appointed within six months of the death of the intestate should be removed at the request of the next of kin, and the nominee of the next of kin should be appointed in his stead. The court in this case appears to put the nominee of the next of kin upon the same footing as the next of kin themselves, and entitled to preference in administration. . . .

"While, therefore, we would not hold that the county court must in any event appoint the nominee of the next of kin, yet such nominee should be preferred, and, unless there are valid reasons, the nominee should be appointed.

"In other words, the next of kin is entitled to have such nominee appointed, if he is a fit and suitable person; and, in determining the question of fitness, the same rules and tests must be made as would be if the next of kin were applying in person."

And finally the court said:

"The judgment of the circuit court will therefore be affirmed as to Allen and Frizzell and reversed as to Smith, and the cause remanded, with copy of this opinion, to the circuit court of Davison county, with instructions to issue a procedendo to the county court, directing the judge of that court to proceed to appoint an administrator *de bonis non* of the estate of Mary J. Wooten. In making said appointment, the next of kin will have preference, unless unfit for the office; next, the appointee of the next of kin, unless unfit; next, the largest creditor; and, in default of these, such person as the county judge may deem most suitable and proper, in accord with the rules herein laid down."

In Re Neidig's Estate, 183 Pa. St. 492, we find:

"If the parties entitled to letters do not desire to personally settle the estate, they may name a suitable person to do so, and the register must regard their selection. The opinion of Judge Watson in Jones' Appeal, 10 Wkly. Notes, Cas. 249, which was adopted by the Supreme Court, contains the following apposite language on this subject: 'I feel very confident that no case can be found where it has been held that the register is at liberty to disregard the clearly expressed wishes of the parties preferred by the law and entitled to the estate, whether they be residents of this Commonwealth or beyond its borders, and grant letters to a total stranger, whose only interest is the expectation of earning commissions by his services in the execution of the trust. If the parties who are entitled to the estate are not in a position to administer it themselves, then the trust should be committed to their nominee, who has their confidence and whose services are to be paid for from their funds.' "

The North Carolina cases cited, among which is Little v. Berry, 94 N. C. 437, are to the same effect.

While it is not so stated, it is evident this uniform construction by the courts of these four states is based upon a consideration of the legislative intention or purposes in the enactments rather than the technical meaning of the language employed; that the statutes are a recognition of a property right and attendant privileges,

and the legislature having recognized and declared a right of preference in the administration of an estate in those persons, and in those alone, who share in its distribution either as heirs or creditors, the law should be so construed by the courts to give practical force and effect to such intention or purpose, which can be done effectively only by permitting those thus preferred, when disinclined or unfit to administer personally, to nominate a suitable person in their stead whenever that can be done without interference with subordinate rights of preference given by the statute to other distributees also interested in the estate.

Such has been the universal practice in this state under the statute in force practically without change in its phraseology almost since the state was organized, as is evidenced by all of the cases cited, and especially by the fact that no case in which that practice has been varied is cited by the learned counsel for appellant, whose industry and care in the preparation of this case is attested by the splendid brief they have furnished us. Further than that, that practice is a matter of common knowledge, and in the Hilton case, *supra,* this court expressly recognized and approved it. And further still, only such a construction, in our judgment, gives such force and meaning to the statute as fully to effectuate the evident and sole purpose of its enactment, which is to give to those most interested in the estate, in the order fixed by the statute, and who must bear the expense of an administration, a preference over strangers in the management, control and distribution of the estate, and such a construction, in our opinion, is always preferable to a mere technical construction of the language employed.

No good and satisfactory reason can be assigned why a surviving wife or child or other distributee, who is inexperienced in business affairs or disinclined to act personally, should be forced to forego the right, recognized and declared by law, to such control, as is incident to administration, of his or her own property, and be denied the right to select a suitable person in whom, by reason of friendship or acquaintance, confidence is reposed, and to suffer the appointment of an objectionable stranger simply because the court may consider the stranger equally or more competent than the nominee. When it is conceded, as it is, that the nominee must be competent and suitable every possible objection is silenced because

the bond the court may require, in the exercise of his discretion, protects every other interest.

The importance, upon the present inquiry, of the case of Anderson's Committee v. Anderson's Admr., referred to above, lies in the fact that it was there held that where the right of administration under the statute had devolved upon an insane person, his committee could exercise that right which the statute had given to his *cestui que* trust, which is a recognition of the right of preference as a property right rather than as a personal privilege, and therefore an authority persuasive of the correctness of our construction.

We, therefore, conclude that as Judge Bingham was the sole distributee residing in the state and his nominee was suitable and competent to administer, the court did not have the discretion to appoint another, unless this right was waived, which brings us to the second question.

2. Our statutes fix a different limitation as to time for the exercise by distributees of the same preference in the appointment of administrators of intestates and of administrators with the will annexed of testates. In the former case, the preference is waived unless exercised at the second term of the county court from the death of the intestate, while, in the latter case, it may be exercised when the will is produced and proved. Section 3897, Kentucky Statutes.

Mrs. Bingham died July 27, 1917. On August 28th, her surviving husband produced in the Jefferson county court authenticated copies of her will and one codicil and the original of another codicil, the original will and first codicil having been probated in Florida, where the testatrix owned property, and therefore not possible to be produced, procured a commission to take depositions of non-resident witnesses, and the order directing the issuance of the commission, that day entered in the Jefferson county court, recites that the surviving husband suggested the appointment of the Fidelity & Columbia Trust Company as administrator with will annexed, as and when the will and codicil should be probated. The will was proven and probated September 4, 1917, at which time Judge Bingham moved the appointment of the Fidelity & Columbia Trust Company as administrator with the will annexed, so that he clearly exercised his option at the earliest possible opportunity, in addition to having given notice in advance of his intention so to do; and

he clearly did not waive his right either by reason of the time at which he made his nomination or by having nominated another in his stead.

3. The third question raised is, whether or not, upon the appeal to the circuit court, the motion of the Louisville Trust Company, to transfer the case to equity should have been sustained.

Section 726, Civil Code, provides that all appeals to the circuit court shall be docketed and stand for trial as ordinary actions. It was decided, however, in Marquot v. Meadows, 97 Ky. 543, that the code provision was simply to govern the clerk in docketing such appeals, but did not change the law as to trials, and that an equity action should, upon motion, be transferred.

Section 6, Civil Code, is as follows:

"Unless otherwise provided by this code or other statute.

"1. Actions of which courts of chancery had jurisdiction before the first day of August, 1851, may be equitable; and actions of which such jurisdiction was exclusive must be equitable.

"2. All other actions must be ordinary."

As the appointment of administrators has always been controlled by statute and lodged with county courts, the jurisdiction of which in such matters frequently has been declared to be original and exclusive, and of which matter courts of chancery never had either exclusive or other jurisdiction, so far as we can find, we do not think such a proceeding as this can be called an equitable action under the code classification or otherwise; and the circuit court did not err in overruling the motion to transfer the cause to the equity docket.

4. There is one other contention made by appellant, which, although foreclosed by our conclusion that the court did not have the discretion to appoint another than the nominee of Judge Bingham, we think by reason of the insistence with which it is urged, should be noticed briefly. It is insisted that, as the estate involved is large, variously estimated from fifty to one hundred million dollars, and there will be due the state a large inheritance tax, the court was justified in appointing appellant as co-administrator with the nominee of the sole resident distributee, in which nomination all non-resident distributees concurred, upon the ground that the nominee of the distributees might not guard the interests of the state against the probable desire of those at whose instance it was ap-

pointed, to avoid payment of such taxes as well as one not so chosen.

That any such assumption is wholly unwarranted in this case is conclusively proved by the fact that the officer of the state, charged with the collection of this tax, has expressed his approval of the appointment of the Trust Company selected by Judge Bingham, and by the further fact that neither the Attorney General of the state nor any of the eminent counsel specially employed by the proper state authorities to look after the collection of this tax, or any creditor or interested party, has objected to such appointment, or suggested any reason or necessity for the appointment of appellant, or another as co-administrator.

We, of course, do not hold that the county court may never associate with the nominee of one or even all of the preferred distributees a co-administrator of his own selection, any more than that such nominations must always be respected, because the absolute right to nominate is always dependent upon the nominee being suitable, and whenever it is made to appear that the nominee is not suitable, which was not done here, the court, in the exercise of its recognized discretion under such circumstances, may either disregard entirely the nomination or associate another with the nominee; but we do hold that sumply because of the nomination by those vested with such a right, the nominee will not be presumed to be inclined to illegally favor such distributees over creditors, and therefore unfit for the trust, because such a rule would always imply the unfitness of the nominee and thus give to the court, in all cases, the discretion to disregard the very right of nomination we have held the statute confers. Nor is the mere fact that the estate is large, in the absence of proof that such fact renders the nominee incompetent to properly discharge his duties, in our judgment, sufficient to warrant the appointment by the court, upon its own motion, of a co-administrator objectionable to the distributees having a right of nomination; for that would lead us to the absurd conclusion that, while the right of nomination depends upon and grows out of the legislative recognition of property rights, yet if such rights are large, their mere size will *ipso facto* qualify or destroy the right of nomination. Stated otherwise, a property right, if moderate or insignificant in value, would confer a right of nomination, but if large and valuable, it would qualify or destroy such right.

Having recognized the right of nomination, the only limitation that can be placed upon such right, which will be either reasonable or uniform, must be made to depend upon the fitness of the nominee and not upon the size of the estate, although its mere size might of course affect and, in some cases, even determine the fitness or unfitness of the nominee, but not, we think, when the nominee is one of the strongest and largest trust companies in the state.

Wherefore, the judgment is affirmed.